**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7                UNITED STATES DISTRICT COURT

8                NORTHERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14  COUNTY OF MENDOCINO,

15          Plaintiff,                    No. C 05-4429 PJH

16      v.                              **ORDER GRANTING PARTIAL SUMMARY**
                                         **JUDGMENT AND GRANTING MOTION**
17  WILLIAMS COMMUNICATIONS,            **FOR LEAVE TO AMEND**
    et al.,
18
            Defendants.
19  _____/

20          Defendant's motion for partial summary judgment came on for hearing before this

21  court on April 5, 2006.  Plaintiff appeared by its counsel, Deputy County Counsel Wendy L.

22  Haskell, and defendant appeared by its counsel Michael G. Thornton.  Having read the

23  parties' papers and carefully considered their arguments and the relevant legal authority,

24  and good cause appearing, the court hereby GRANTS the motion as follows and for the

25  reasons stated at the hearing.

26          Also before the court is plaintiff's motion for leave to amend the complaint,

27  previously noticed for hearing on April 19, 2006.  For the reasons stated below, the court

28  finds that the motion should be GRANTED.

United States District Court

For the Northern District of California

## BACKGROUND

This is a case alleging violations of the terms of an encroachment permit issued to Williams Communications ("Williams") by plaintiff County of Mendocino ("the County"). The County originally filed this action against Williams and Wiltel Communications Managed Services of California, Inc. As the result of a series of name changes and reorganizations, an entity known as WilTel Communications, LLC ("WilTel") is now the sole defendant.

In April 2000, Williams applied for an encroachment permit from the Road Division of the Mendocino County Department of Transportation. Williams was seeking to install approximately 65 miles of fiber optic telephone cable over two separate routes on various County roads, as part of its construction of a nationwide fiber optic network. The County required that Williams obtain the permit and pay a permit fee of $153,694 before carrying out the construction.

On May 16, 2000, the County issued the permit. The permit included eight "Special Conditions," one of which required Williams to "be responsible for full restoration of all damaged portions of County Roads which are attributable to this project either directly (resulting from trenching, facility installation, or backfilling operations) or indirectly (resulting from heavy equipment traffic due to disposal of materials or transporting facilities or backfill materials to the jobsite)."

The permit also included a number of "General Provisions," one providing that "[a]ll work shall be done subject to . . . the satisfaction of the [County]," and another requiring that the road surfacing be replaced "equal to or better than the surfacing disturbed." A third "General Provision" provided that "[a] permit shall not be effective for any purpose unless and until [Williams] files with [the County] a surety in the form and amount required by [the County], unless specifically exempted on the face of said permit." The permit itself stated that "the amount of surety for work authorized by this permit shall be $N/A."[1]

The County had the roads inspected following the completion of Williams' work in

---

[1] According to the County, it was prohibited from the posting of a bond by California Streets & Highways Code § 1468.

2

United States District Court

For the Northern District of California

1  2001.  The County claims that the inspection found major damage to Fish Rock Road and

2  Mountain View Road.  On March 12, 2002, the County made a formal demand on Williams

3  requesting that it comply with the conditions of the permit and restore the roads to their

4  previous condition.  In May 2002, the County made a second demand.  However, Williams

5  apparently never made the repairs to the roads.

6      The complaint in this action was filed in Mendocino County Superior Court on

7  October 14, 2005, alleging two causes of action – breach of contract and violation of law.

8  WilTel removed the case on November 1, 2005, and then filed a motion to dismiss the

9  second cause of action.  The County withdrew the second cause of action on November

10  28, 2005, and the court granted the motion to dismiss.   The dismissal of the second cause

11  of action left only the claim for breach of contract, in which the County asserts that Williams

12  failed to carry out the work in accordance with the terms of the encroachment permit, and

13  claims that it was damaged as a result of Williams' "breaching the permit."

14      On December 19, 2005, WilTel filed an answer and counterclaims, alleging that the

15  requirement that Williams pay the $153,694 permit fee was unlawful under California Public

16  Utilities Code § 7901 and California Government Code § 50030; and alleging that the

17  County's requirement that Williams pay the permit fee before Williams would be permitted

18  to install its fiber optic cable violated 47 U.S.C. § 253 because it had the effect of

19  prohibiting Williams from providing interstate and intrastate telecommunications service.

20  WilTel seeks compensatory damages and a declaratory judgment that the claims of the

21  County asserted in this action are barred by the provisions of 47 U.S.C. § 253, by the

22  Supremacy Clause of the United States Constitution, by California Public Utilities Code

23  § 7901, and by California Government Code § 50030.

24      On February 23, 2006, WilTel filed a motion for summary judgment.  A week later, at

25  the March 2, 2006, initial case management conference, the court set discovery cut-off for

26  November 17, 2006.  On March 15, 2006, the County filed an opposition to the motion for

27  summary judgment, and also filed a motion for leave to amend the complaint.

28

United States District Court

For the Northern District of California

**DISCUSSION**

A.     Defendant's Motion for Summary Judgment

        1.     Legal Standard

        Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

        The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

        2.     WilTel's Motion

        WilTel now seeks summary judgment on the County's breach of contract claim. WilTel contends that there are no disputed material facts, and asserts that summary judgment is appropriate because a permit is not a contract and violation of the terms of the encroachment permit therefore cannot constitute breach of contract and does not entitle the County to recover damages.

        WilTel asserts that the words "permit" and "license" are used interchangeably in cases analyzing their legal effect, and contends that under California law, a license, which simply allows an entity to pursue a regulated activity, has none of the elements of a contract and does not confer an absolute right, but rather a personal privilege to be exercised under existing restrictions and under any other that may reasonably be imposed.

4

United States District Court

For the Northern District of California

The County argues, however, that a permit and a license are not the same – that a permit is a "contractual agreement with a governmental entity," while a license is not. The County contends that the encroachment permit contained all the elements of a contract under California Civil Code § 1550: 1) parties capable of contracting, 2) consent of the parties, 3) lawful object, and 4) sufficient consideration. The County asserts that both parties were capable of contracting and both consented to the agreement, that the purpose of the agreement was legal, that there was sufficient consideration (payment of the $153,694 permit fee). Citing Mendocino County Code §§ 20.308.055 and 20.532.010, the County asserts that it was free to grant or deny the application for the permit, because the project was partially in the Coastal Zone.

The County contends that the facts in the present case support the conclusion that the permit issued to Williams was more like a contract than a license. In particular, the County emphasizes what it terms the "negotiations" that led to the parties' agreement that is embodied in the encroachment permit. Christopher Rau, the Mendocino County Department of Transportation employee responsible for issuing the permit to Williams, states in a declaration that he was involved in negotiations for several months with employees of Williams regarding the conditions that would be attached to the permit. He claims that it was as a result of these negotiations that the parties agreed that Williams would pay for an engineering firm to oversee its work, would return the roads to the condition they were in prior to commencement of the project, would pay for monitors to ensure that the environment would be protected, and would complete the work in a specific manner.

Rau maintains that the County did not impose these conditions on others seeking encroachment permits, and claims that Williams agreed to the conditions so that it could obtain the right to place its fiber optic cable in the County. Rao also asserts that he was required to closely monitor the work being done on the County's roads – not something he usually did in connection with an encroachment permit – and that the County also entered into a special contract with an engineering firm to monitor Williams' work.

United States District Court

For the Northern District of California

1    The parties have provided no evidence establishing any disputed material issues of

2    fact, and the court finds that the motion must be GRANTED.  The encroachment permit

3    was not a contract for at least three reasons.  First, a permit is not a contract under

4    California law, and the County cites no persuasive authority to the contrary.  Second, there

5    is no evidence showing that the parties viewed the permit as a contract, and all indications

6    are that they viewed it as a permit.  Third, the permit does not appear to meet the other

7    elements of a contract.

8    First, under California law, neither a license nor a permit is considered a contract.

9    In Rosenblatt v. Calif. State Bd. of Pharmacy, 69 Cal. App. 2d 69 (1945), the plaintiff filed

10   suit to compel the State Board of Pharmacy to issue him a renewal of his license as an

11   assistant pharmacist.  His license had been revoked because the State eliminated the

12   provision for registering "assistant" pharmacists (those who had completed only one-half of

13   the course work required for graduation from a school of pharmacy).  The plaintiff argued

14   that a license issued to one who meets the requirements of the authorizing statute, and

15   thereafter is used by him as a means of earning a living, becomes a vested right.  The

16   California Court of Appeal held that "a license from the state issued in the exercise of its

17   police powers permitting the doing of that which without the license would be unlawful is not

18   a contract and does not convey a vested right," has "none of the elements of a contract,"

19   and "does not confer an absolute right but a personal privilege to be exercised under

20   existing restrictions." Id. at 73-74.

21   In US Ecology, Inc. v. State of Calif., 92 Cal. App. 4th 113 (2001), the court held that

22   a license to operate a low-level radioactive waste disposal facility was not a contract.  Id. at

23   129 (citing Rosenblatt, 69 Cal. App. 2d at 74).  In Irvine v. State Bd. of Equalization, 40 Cal.

24   App. 2d 280 (1940), the California Court of Appeal held that there is no inherent right in a

25   citizen to sell intoxicating liquors, and a license to do so is not a "contract," but is a "permit"

26   to do what would otherwise be unlawful. Id. at 284; see also Saso v. Furtado, 104 Cal.

27   App. 2d 759, 764 (1951) (liquor license is not a proprietary right within the meaning of the

28   due process clause of the California Constitution, and is not a contract; rather it is a permit

United States District Court

For the Northern District of California

1   to do what would otherwise be unlawful).

2        California courts have also specifically held that permits are not contracts.  In County

3   Sanitation Dist. v. Superior Court, 218 Cal. App. 3d 98 (1990), the court held that a waste

4   water discharge permit was not a contract.  Id. at 108.  In Scott-Free River Expeditions, Inc.

5   v. County of El Dorado, 203 Cal. App. 3d 896 (1988), the court held that a county permit

6   authorizing use of a navigable river for commercial rafting was not a contract within the

7   meaning of the California Revenue and Taxation Code, because "a contract requires

8   consideration" and the plaintiffs had not suggested any consideration for their exclusive use

9   of the river.  Id. at 913.  Further, in 1950, the California Attorney General issued an opinion

10  stating that a licence or permit issued by the State in exercise of its police power, permitting

11  conduct of activity otherwise unlawful, is not a contract and confers no vested right in the

12  sense that the law under which it is passed cannot ever be amended or repealed.  16 Ops.

13  Atty. Gen. 29, 30 (Opinion No. 50-113, July 28, 1950) (citing Rosenblatt and Vincent

14  Petroleum Corp. v. Culver City, 43 Cal. App. 2d 511 (1941)).

15       The only cases cited by the County in support of its argument that the encroachment

16  permit was a contract – In re Lorber Indus. of Calif., Inc., 675 F.2d 1062, 1067 (9th Cir.

17  1982), and Ihrig v. New York Atlantic–Inland, Inc., 176 A.D.2d 1160 (1991) – are not

18  persuasive authority.

19       The issue in In re Lorber Industries was whether sewer use fees claimed by a county

20  Sanitation District from a debtor in bankruptcy were "debts" (without priority in bankruptcy)

21  or taxes (entitled to preference over other debts).  The Ninth Circuit concluded that the

22  sewer use fees were not taxes, but were

23           fees for services provided to the industrial users of the system.  The specific
             services, processing and disposal of excess wastewater, are provided to
24           industrial users, rather than to the general local population. Amounts
             specifically charged for those services are by nature a debt obligation, based
25           on a contractual agreement, the application for and issuance of a permit. The
             source of the obligation is not the authorizing legislation, but Lorber's
26           decisions to acquire a permit and to engage in a high level of system use.

27  In re Lorber Indus., 675 F.2d at 1067.  The court noted in a footnote that while the debtor

28  Lorber had obtained a permit, the imposition of charges on non-permit users would not

**United States District Court**
For the Northern District of California

1    transform the charges into taxes because the non-permit user who discharges into the

2    system also incurs a debt obligation, based on implied contract.  Id. n.4.

3        In other words, the fact that Lorber obtained a "permit" to sign up for sewer service

4    did not change the fundamental arrangement of payment for utility services provided –

5    which was a debt arising out of the "contractual" agreement to pay for the services on an

6    ongoing basis – because Lorber's position was the same as that of any other user of

7    utilities.  In that regard, Lorber's reference to "the application for and issuance of a permit"

8    as somehow reflecting a "contractual agreement," cannot be viewed as a holding that a

9    permit is a contract.

10       Moreover, the California Court of Appeal in County Sanitation Dist. v. Superior

11   Court, 218 Cal. App. 3d 98 (1990) criticized Lorber, on the basis that the Ninth Circuit's

12   statement that the charges were based on a contractual agreement was not necessary for

13   a determination of the main issue in the case, and was, therefore, dicta; and on the basis

14   that the Ninth Circuit failed to set forth any analysis to support its bare conclusion that the

15   "application for and issuance of a permit" was a "contractual agreement," such that the

16   unpaid service charges became a "debt obligation."  Id. at 108-09.

17       In Ihrig, a New York case, the Town of Cobleskill contracted with New York

18   Atlantic–Inland, Inc., to issue building permits and perform construction inspections.

19   Plaintiffs, residents of Cobleskill, sued New York Atlantic for inadequate building inspection.

20   One of the plaintiffs' theories in that case was that they were third-party beneficiaries of the

21   contract between Cobleskill and New York Atlantic.  However, the trial court dismissed that

22   cause of action, and the dismissal was affirmed by the Appellate Division.  Ihrig, 176

23   A.D.2d at 1163.  The court in Ihrig made no finding that the building permit was a contract,

24   and that case therefore has no bearing on the dispute in the present case.

25       Second, there is no indication that WilTel and the County viewed the permit as a

26   contract.  The application for the permit is entitled "Standard Encroachment Permit

27   Application," and states, "In compliance with the Mendocino County Code and the

28   California Streets and Highways Code, the undersigned hereby applies for permission to

United States District Court

For the Northern District of California

construct the following improvement or otherwise encroach upon a County Road

Reservation or Right of Way . . . ."  The attached "General Provisions" state, "A permit is

issued under the provisions of Chapter 5.5 of Division 2 of the California Streets and

Highways Code and Chapter 15.20 of Volume 1 of the Mendocino County Code."

The referenced provisions of the Streets and Highways Code and the Mendocino

County Code provide as follows.  Chapter 5.5 of Division 2 of the Streets and Highways

Code authorizes the county road commissioner to "issue written permits, as provided in this

chapter, authorizing the permittee to [among other things,]. . . [m]ake an opening or

excavation for any purpose in any county highway," or "[p]lace, change or renew an

encroachment."  Cal. Sts. & High. Code § 1460.  In addition, "[a]ny act done under the

authority of a written permit, issued pursuant to the provisions of [Chapter 5.5], shall be

done in accordance with the applicable provisions of [Chapter 5.5], and the terms and

conditions of such permit."  Cal. Sts. & High. Code § 1461.  Any permit issued under the

provisions of Chapter 5.5 "may provide that the permittee will pay the entire expense of

replacing the highway in as good condition as before, and may provide such other

conditions as to the location and the manner in which the work is to be done as the road

commissioner finds necessary for the protection of the highway."  Cal. Sts. & High. Code

§ 1462.

Chapter 15.20 of the Mendocino County Code provides that "[t]he purpose of this

Chapter shall be deemed to supplement Sections 1480 to 1496, inclusive, of Chapter 6,

Division 2 of the [California] Streets and Highways Code."  Mendocino County Code

§ 15.20.020.  Chapter 6, Division 2, of the California Streets and Highway Code defines

"encroachment" as "any structure or object of any kind or character placed, without

authority of law, either in, under or over any county highway."  Cal. Sts. & High. Code

§ 1480(b).  Mendocino County Code Chapter 15.20 provides further that "[n]o person shall

construct new road or driveway approaches to any County highway or install any culvert or

pipe within the right of way of any County highway, without first securing a permit for that

purpose, from the Road Department of the County of Mendocino."  Mendocino County

United States District Court

For the Northern District of California

1   Code § 15.20.030.

2          In short, the application states that Williams applied for an encroachment permit; and

3   the permit itself states that it is an "encroachment permit," issued pursuant to State and

4   County laws governing the issuance of encroachment permits.  Those laws prohibit the

5   making of any opening or excavation in any County highway without a permit.  Williams

6   applied for a permit, and the County issued a permit – there is no evidence that the parties

7   intended to enter into a contract.

8          Any negotiations as to the terms of the permit are irrelevant regardless of what was

9   discussed.  The actual wording of the permit shows that the so-called negotiation involved

10  only the imposition of additional burdens on WilTel, and that the only terms of the permit

11  that the County relies upon in its contract claim (performance of the work to the satisfaction

12  of the County, and replacement of the road surface to equal or better than the original road

13  surface) are not in the negotiated Special Conditions but rather in the printed form General

14  Conditions.  Moreover, the County cites no authority supporting the proposition that

15  negotiating the terms or conditions of a permit will transform the permit into a contract.

16         Third, the permit does not appear to meet the other elements of a contract.  For

17  example, the permit states in the General Provisions that it is revocable on five days notice

18  ("[e]xcept as otherwise provided for public agencies and franchise holders").  Thus, it is not

19  legally enforceable in the same way as a contract.  Moreover, the County has not

20  established that it was free not to enter the supposed "contract."  As a public entity, the

21  County is required to issue permits to anyone who submits a proper application and

22  qualifies for the permit under the law.

23         The County argues that under Mendocino County Ordinances §§ 20.308.055 and

24  20.532.010, it was free to exercise its discretion to deny the application.  However, as

25  WilTel has pointed out, the County has not identified the applicable sections or subsections

26  of the cited ordinances.  Thus, the court cannot determine whether they support the

27  County's position.  Section 20.308.055 provides a list of "definitions," none of which seem

28  to apply here.  Section 20.532.010 states that if a coastal permit is required under Section

10

United States District Court

For the Northern District of California

20, then no building permit, encroachment permit, or any of several other types of permits and licences shall be issued prior to the issuance of the coastal permit.  That section does not support the County's argument.

WilTel's initial argument, and the one on which the rest of its argument partially rests, is the claim that the term "permit" and the term "license" are used interchangeably in the cases analyzing their legal effect.  It is true that some sources state that a permit is a license, while others state that a license is a permit.  Black's Law Dictionary defines "permit" as "[a] certificate evidencing permission; a license," and defines "license" as "[a] revocable permission to commit some act that would otherwise be unlawful" and "[t]he certificate or document evidencing such permission."  Black's Law Dictionary (7th ed. 1999).  In People ex rel. Dept. of Public Works v. DiTomaso, 248 Cal. App. 2d 741 (1967), the court stated that "a permit granting an encroachment constitutes a mere revocable license which may be withdrawn at will."  Id. at 750.

In Irvine, the court described a State-issued liquor "license" as a "permit" to do what would otherwise be unlawful.  Irvine, 40 Cal. App. 2d at 284.  At least one California statutory provision, California Insurance Code § 1627, states that "[a] license is a permit to act in the capacity specified herein" (referring to persons licensed as life agents or fire and casualty broker-agents).  The California Supreme Court, in discussing the legality of a license tax imposed on attorneys by the City of Sonora, stated that "[a] license in its proper sense is a permit to do business which could not be done without the license."  City of Sonora v. Curtin, 137 Cal. 583, 585 (1902).  The California Court of Appeal, in discussing the revocation of an oil well drilling permit issued by the City of Culver City under what is referred to in the opinion as a "licensing ordinance," stated that

> [a] license is only a permit to do a particular thing, and it is not property in any legal sense.  It is a mere privilege granted by the municipal officer empowered to issue it, and is always revocable; the correlative power to revoke a license being a necessary consequence of the power to grant it.

Vincent Petroleum, 43 Cal. App. 2d at 517 (citation and quotation omitted).

While it may not be strictly true that "license" and "permit" are used interchangeably,

**United States District Court**

For the Northern District of California

1 the two terms have essentially the same meaning – an approval or authorization from the

2 controlling governmental entity to do what would be unlawful in the absence of the license

3 or permit.  Thus, in general, any case holding that a license is not a contract – such as

4 Rosenblatt – would in the court's view also apply to a case involving a permit.

5 B.    Plaintiff's Motion for Leave to Amend the Complaint

6     1.    Legal Standard

7        Federal Rule of Civil Procedure 15 requires that a plaintiff obtain either consent of

8 the defendant or leave of court to amend its complaint once the defendant has answered,

9 but "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); see also,

10 e.g., Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave

11 to amend granted with "extreme liberality").  Leave to amend is thus ordinarily granted

12 unless the amendment is futile, would cause undue prejudice to the defendants, or is

13 sought by plaintiffs in bad faith or with a dilatory motive.  Foman v. Davis, 371 U.S. 178,

14 182 (1962); DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987).

15 Amendments seeking to add claims are to be granted more freely than amendments

16 adding parties.  Union Pacific R. Co. v. Nevada Power Co., 950 F.2d 1429, 1432 (9th Cir.

17 1991).

18     2.    The County's Motion

19        On the day it filed the opposition to WilTel's motion for summary judgment, the

20 County also filed a motion for leave to amend the complaint.   The County seeks leave to

21 amend to add three new causes of action – (1) violation of law (Streets and Highways Code

22 § 1462, which states that encroachment permits may provide that the permittee will pay the

23 entire expense of replacing the highway in as good condition as before); (2) injunctive

24 relief; and (3) fraud (claiming that defendant promised to replace the highway in as good

25 condition as before, and that the County relied on this assurance in issuing the permit).

26 The proposed amended complaint also asserts the original cause of action for breach of

27 contract, on which summary judgment has now been granted.

28        The County argues that none of the factors that militate against allowing amendment

12

**United States District Court**

For the Northern District of California

1    are present here – undue delay, bad faith or dilatory motive, repeated failures to cure

2    deficiencies by amendment, undue prejudice to opposing party, or futility of amendment.

3    However, other than reciting the factors and claiming that they are not present, the County

4    provides no specific argument or analysis.

5         In opposition, WilTel argues that all the factors are present, and that the motion

6    should be denied.  First, WilTel contends that the County delayed unduly in seeking leave

7    to amend, as the County was aware of all the facts on which the proposed amendment is

8    based at the time the complaint was filed.  WilTel notes that the County has offered no

9    explanation as to why the request for leave to amend was not filed sooner, suggesting that

10   it is improper for the County to seek to change the theory of the case without making a

11   showing of a change in knowledge or other conditions over which the County had no

12   control.

13        WilTel contends that the courts look with disfavor on motions to amend that are not

14   made until after the opposing party has moved for summary judgment.  WilTel

15   acknowledges that in most such cases, discovery had been completed when the motions

16   for summary judgment were filed and the motions for leave to amend were made.

17   However, the County asserts, while discovery has not been completed in this case,

18   discovery is not an issue as to the County's proposed claims.  WilTel contends that all the

19   relevant facts have been known to the County "for years," in that the roads involved are

20   located in the County of Mendocino, and the County can have the roads tested and

21   examined by experts any time it wants and has apparently already done so.  WilTel also

22   claims the witnesses involved are past or present County personnel.  WilTel asserts that

23   completion of discovery is not going to add or change any facts on which the County

24   asserts that its claims are based.

25        Second, WilTel argues that it would be unduly prejudiced if the court allowed the

26   County to amend the complaint, because "the action will have to largely start over, and

27   much of the effort devoted to the case during the past six months will have been wasted."

28   WilTel complains, for example, that it will have to file another motion to dismiss for failure to

United States District Court

For the Northern District of California

state a claim, and that if all the claims are not dismissed at that point, the parties will have to exchange additional disclosures and new discovery will have to be propounded. According to WilTel, this will set the case back "by months," and the court's pretrial order will undoubtably have to be changed due to the additional time required for motions and additional discovery, including, with regard to the fraud claim, the time required for WilTel to locate its witnesses, most of whom no longer work for WilTel and who may be difficult to find.  WilTel maintains that the costs of such additional proceedings and the cost of needlessly lengthening this litigation would not have been incurred if the County had pleaded all its theories when it filed the original complaint.

Third, WilTel argues that the proposed amendment would be futile.  The first claim in the proposed amendment is the same breach of contract claim on which the court has already granted summary judgment.  The second claim is based on a statute that provides that encroachment permits "may provide that the permittee will pay the entire expense of replacing the highway as in good condition as before."  WilTel contends that plaintiff has not claimed that WilTel's replacement of the roadway was below the industry standard for digging, refilling, or replacing trenches; or that WilTel was negligent in the performance of its work; or that any structural defects have appeared in the roadways since the time that WilTel did the work.  According to WilTel, the only way the repaired roads are not in "as good condition as before" is cosmetic, because the resurfaced trenches are a different color than the original pavement installed years before, or may have some "non-structural cracks" or other unattractive qualities.

WilTel contends, however, that "as good as before" should not require complete repavement of the roads, which is what WilTel claims the County really wants.  WilTel argues that requiring complete repaving of any roadway where fiber optic cable is installed would have the effect of prohibiting WilTel or any other telecommunications company from providing interstate and intrastate communications services, particularly in remote areas like Mendocino County.  WilTel asserts that any requirement that has that effect would be unlawful under 47 U.S.C. § 253, and that the claim would therefore be futile.

14

United States District Court

For the Northern District of California

1    The third claim in the proposed amended complaint seeks an injunction to compel

2  WilTel to return the roads to "as good condition as before," and does not allege any other

3  facts beyond those alleged in the first and second causes of action.  Thus, WilTel argues

4  that this claim would be futile.

5    The fourth claim in the proposed amended complaint alleges that WilTel fraudulently

6  represented that the roads would be returned to a condition better than they were prior to

7  WilTel's work.  WilTel argues that this is a failed attempt to plead a claim of promissory

8  fraud.  WilTel contends that the fourth cause of action does not plead fraud with specificity,

9  as required by Federal Rule of Civil Procedure 9(b), because the County does not specify

10  who spoke to whom, or precisely what was said.  In addition, WilTel argues, the claim does

11  not adequately plead reliance.  According to WilTel, the assertion that the County would not

12  have issued the encroachment permit in the absence of WilTel's representations is not true,

13  because the County was required to issue the encroachment permit, and because failure to

14  do so would have violated 47 U.S.C. § 253.

15    In reply, the County argues that WilTel will not be prejudiced if the motion to amend

16  is granted at this stage of the litigation.  The County argues that WilTel cannot show that

17  the County delayed in filing this motion, nor that the motion was filed in bad faith.  The

18  County asserts that in the cases where courts found that the plaintiff had delayed unduly,

19  more than two years has elapsed between the filing of the complaint and the filing of the

20  motion for leave to amend.  Also, in many cases, discovery had closed.  By contrast, the

21  County argues, it filed this motion within two weeks of the date that discovery opened, and

22  only after having had the opportunity to receive and review WilTel's initial disclosure

23  statement.  The County asserts that allowing the amendment will not affect discovery, as

24  discovery has barely begun, no depositions have been scheduled, and neither party has

25  responded to any discovery request.

26    The County also contends that this case is distinguishable from those cases where

27  courts found amendment was not proper where a motion for summary judgment was

28  pending, because in this case, WilTel filed its motion for summary judgment a week before

United States District Court

For the Northern District of California

1   the initial case management conference.  The County argues that it would be unreasonable

2   to expect that it could have discovered new issues and filed its motion for leave to amend

3   before that point.

4     The County argues that the proposed amendment would not be futile.  With regard

5   to the "violation of law" claim, the County disputes WilTel's assertion that the problems with

6   the roads are merely "cosmetic."  The County claims that the roadways are cracked, are

7   raised in areas where they were not previously raised, and are in disrepair.  The County

8   argues that WilTel had a duty under California law to return the roads to their previous

9   condition, and that WilTel failed to do so.

10     The County also disputes WilTel's assertion that requiring telecommunications

11   companies to keep the status quo when they tear up the roads is not a prohibition on

12   interstate commerce.  The County notes that under 42 U.S.C. § 253(b) [probably referring

13   to 47 U.S.C. § 253(b)], "Nothing in this section shall affect the ability of a State to impose,

14   on a competitively neutral basis and consistent with section 254 of this title, requirements

15   necessary to preserve and advance universal service, protect the public safety and welfare,

16   ensure the continued quality of telecommunications services, and safeguard the rights of

17   consumers."  The County maintains that protecting the "public safety and welfare" includes

18   requiring telecommunications companies to repair the roads after they install fiber optic

19   cable.

20     Finally, with regard to the fraud claim, the County asserts that it was not required to

21   issue the encroachment permit, as part of the area was in the Coastal Zone, and the

22   County has discretion to deny issuance of permits in the Coastal Zone under Mendocino

23   County Ordinance §§ 20.308.055 and 20.532.010.

24     At the hearing on WilTel's motion, the court indicated its intention to grant summary

25   judgment.  Counsel for the County asked the court to "stay" the ruling until after it had ruled

26   on the motion for leave to amend.  The court requested the County to brief the question

27   whether there is any authority to support the County's request for a stay.

28     In its supplemental brief, the County argues that leave to amend should be freely

United States District Court

For the Northern District of California

1   granted unless there is some apparent reason for denying the motion – undue delay or bad

2   faith, repeated failure to cure deficiencies, undue prejudice to opposing party, or futility of

3   amendment.  The County claims that none of these factors is present, asserting that the

4   factor that is afforded the most weight is prejudice to the opposing party, and that WilTel

5   has not established that it would be prejudiced by an amended pleading at this stage of the

6   litigation.

7           The County argues that it should not be penalized simply because WilTel chose to

8   file an early motion for summary judgment.  The County argues that a party will be

9   permitted to amend its complaint, even where a motion for summary judgment has been

10  granted, citing two cases that it previously cited in its reply brief – Bennett v. Campbell, 564

11  F.2d 329 (9th Cir. 1997), and Oncology Therapeutics Network Connection v. Virginia

12  Hematology Oncology PLLC, 2006 WL 334532 (N.D. Cal., Feb. 10, 2006) – and one

13  additional case – Lindauer v. Rogers, 91 F.3d 1355 (9th Cir. 1996).  The County does not

14  specifically address the question raised at the hearing – whether there is any authority to

15  support the court's staying the ruling on the motion for summary judgment.

16          The court finds that the motion should be GRANTED.  WilTel has not established

17  any of the factors that favor denying a motion for leave to amend.  The fact that the court

18  granted the motion for summary judgment at the April 5, 2006, hearing does not preclude

19  the court from also granting leave to amend.  No final judgment has been entered, and the

20  court retains jurisdiction over the case because no appeal has been taken.

21          With regard to the Rule 15 factors, WilTel has not established that the County

22  delayed unduly in seeking leave to amend, although there was some delay.  The case was

23  filed in October 2005 and removed in November 2005, WilTel filed a motion for summary

24  judgment in February 2006, and the initial CMC was held one week later, during the first

25  week of March.  Although WilTel's motion for summary judgment was pending at that point,

26  the County did not seek to have its own motion, which it filed less than two weeks after the

27  CMC, heard on shortened time, and did not argue in its opposition to WilTel's motion that if

28  the summary judgment were granted, leave to amend should also be granted.

**United States District Court**
For the Northern District of California

1    Nevertheless, while it is true that the County could have filed its motion sooner, and should

2    have raised the issue of the proposed amended complaint in its opposition to WilTel's

3    motion, the court finds that this is not a sufficient ground to deny the County's motion.

4         More important to the court's decision is the fact that WilTel has not established that

5    it would be prejudiced if leave to amend were granted.  In fact, its arguments are

6    contradictory.  In discussing delay, WilTel notes that the cases that have found that seeking

7    leave to amend is improper while a motion for summary judgment is pending were all cases

8    in which discovery was closed or nearly closed.  But WilTel argues that the fact that

9    discovery had not closed when the County filed its motion is irrelevant to that analysis, as

10   discovery will not produce any more facts because the County has all the facts already.

11        In discussing prejudice, however, WilTel asserts that it will be severely prejudiced if

12   leave to amend is granted because of all the new discovery that the amendment will

13   necessitate.  WilTel also asserts that granting leave to amend will probably even create a

14   need for alteration of the pretrial schedule, and will certainly prove costly for WilTel.

15   However, WilTel never mentions the fact that discovery had not only not closed when the

16   County filed its motion on March 15 – it had barely begun.  Given the early stage of the

17   case, the court finds no appreciable prejudice to WilTel in the filing of an amended

18   complaint.

19        Numerous Ninth Circuit decisions hold that where a motion for summary judgment is

20   pending, and discovery has closed, it is not an abuse of discretion to deny a motion for

21   leave to amend.  Most of these cases rely on Roberts v. Arizona Bd. of Regents, 661 F.2d

22   796, 798 (9th Cir. 1981) (finding no abuse of discretion in denial of motion for leave to

23   amend, where district court made specific finding of prejudice to opposing party, noting that

24   plaintiff attempted to raise new claim "at the eleventh hour, after discovery was virtually

25   complete and the [defendant's] motion for summary judgment was pending before the

26   court").

27        On the other hand, in Ferris v. Santa Clara County, 891 F.2d 715 (9th Cir. 1989), the

28   Ninth Circuit held that "leave to amend following summary judgment may be granted at the

United States District Court
For the Northern District of California

1   discretion of the court."  Id. at 719 (citing Nguyen v. United States, 792 F.2d 1500, 1503

2   (9th Cir.1986).  That rule applies, however, only so long as a final judgment has not been

3   entered.  Where a final judgment has been entered, amendments to pleadings may be

4   made only if no appeal has been taken from the judgment, as the taking of an appeal

5   divests the district court of jurisdiction.

6        The County cites Lindauer for the proposition that "[o]nce a final judgment has been

7   entered, the court can grant a motion to amend complaint if relief from the judgment is

8   given."  In Lindauer, the district court had granted summary judgment for the defendant and

9   had dismissed the action with prejudice, when plaintiffs filed a Rule 15(a) motion for leave

10   to amend the complaint.  The district court denied the Rule 15(a) motion.  The Ninth Circuit

11   affirmed, holding that once a judgment has been entered in a case, a motion to amend the

12   complaint can be entertained only if the judgment is first reopened under a motion brought

13   under Rule 59 or Rule 60.  Lindauer, 91 F.3d at 1357.

14        To the extent that the County is arguing that the court can continue to consider the

15   pending motion for leave to amend so long as judgment has not been entered (even though

16   summary judgment has been granted), then Lindauer lends some support to the County's

17   position.

18        The other two cases on which the County relies are not relevant to the question

19   posed by the court, though they do provide support for considering a motion for leave to

20   amend while a summary judgment motion is pending.  In Bennett, the plaintiff filed a

21   Bivens action in December 1975 against three federal officials.  On April 9, 1976, the

22   original defendants filed a motion for summary judgment.  On April 21, 1976, the plaintiff

23   filed a motion for leave to amend, to add four lesser federal officials as defendants.  The

24   district court granted summary judgment, and then denied the motion for leave to amend as

25   moot.  The Ninth Circuit affirmed the order granting summary judgment, but reversed the

26   order denying leave to amend.  Bennett, 564 F.2d at 331-32.

27        The court found that the claims against the four lesser officials could not be

28   considered moot, because the evidence in the record related only to the original three

19

United States District Court

For the Northern District of California

1    defendants, and the record as to the proposed new defendants was limited to the

2    allegations in the complaint (the proposed amended complaint), which the court was

3    obligated to accept as true for purposes of the appeal.  Bennett, 564 F.2d at 332.  Although

4    the facts in Bennett are distinguishable from the facts in the present case, the ruling shows

5    that a first-filed motion for summary judgment does not necessarily extinguish a later-filed

6    request for leave to amend.

7         In Oncology Therapeutics, the plaintiff filed a motion for leave to amend while a

8    summary judgment motion was pending.  The defendants argued that the pending motion

9    for summary judgment was a factor that weighed against granting leave to amend.  The

10   court noted that the Ninth Circuit has found that it is within the trial court's discretion to

11   grant leave to amend after a motion for summary judgment has been filed (citing Ferris),

12   but also noted that judges in this district had indicated that where a motion for summary

13   judgment is pending, leave to amend might be denied where the plaintiff had not made a

14   "strong showing" to support the amendment.  Oncology Therapeutics, 2006 WL 334532 at

15   *13.

16        The court concluded that the fact that a summary judgment motion was pending was

17   certainly a factor to consider, but only where it reflected that the case was at an advanced

18   stage, with substantial discovery completed – in other words, that it was a factor to

19   consider in looking at possible prejudice to the defendant.  The court noted that the plaintiff

20   had advised before the defendants filed the motion for summary judgment that it intended

21   to seek to amend the complaint, and the court had set up a briefing schedule to

22   accommodate both motions.  The court concluded that "[t]his is not a case in which plaintiff

23   saw defendant's motion for summary judgment, saw the 'writing on the wall,' and then

24   sought to amend to circumvent the inevitable."  Id. at *14.

25        In the present case, the County did not advise the court that it intended to seek

26   leave to amend.  Moreover, it is possible that the County simply "saw the writing on the

27   wall" when WilTel filed its motion for summary judgment, and filed the motion for leave to

28   amend in an attempt to avoid dismissal of the case.  The Ninth Circuit has emphasized that

United States District Court

For the Northern District of California

1    a motion for leave to amend "is not a vehicle to circumvent summary judgment." <u>Schlacter-</u>

2    <u>Jones v. Gen'l Tel. of Calif.</u>, 936 F.2d 435, 443 (9th Cir. 1991), <u>overruled on other grounds</u>,

3    <u>Cramer v. Consol. Freightways, Inc.</u>, 255 F.3d 683, 692-93 (9th Cir. 2001) (en banc).

4    Nevertheless, in view of the fact that the motion for summary judgment was filed before

5    discovery had even begun, and the fact that discovery cut-off is not until November 17,

6    2006, the court finds that the leave to amend should be granted.

7        Finally, with regard to futility of amendment, the claim for injunctive relief is

8    dependent on the viability of the claim of "violation of law." WilTel has not persuasively

9    argued that the "violation of law" claim cannot state a claim – and the parties' arguments

10   suggest the existence of factual disputes with regard to whether the damage to the roads

11   was "cosmetic" or "structural." To the extend that the fraud cause of action is not pled with

12   particularity, that can be remedied. The claims the County seeks to add are not clearly

13   futile, and the court finds that futility provides no basis upon which to deny the motion.

14                      **CONCLUSION**

15        In accordance with the foregoing, the motion for summary judgment on the first

16   cause of action is GRANTED, and the motion for leave to file an amended complaint is

17   GRANTED (except as to the proposed first cause of action). The amended complaint shall

18   be filed no later than May 1, 2006.

19        The date for the hearing on the County's motion, previously set for Wednesday, April

20   19, 2006, is VACATED.

21

22   **IT IS SO ORDERED.**

23   Dated:  April 18, 2006

24                                   _____
                                    PHYLLIS J. HAMILTON
                                    United States District Judge

25

26

27

28